IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY S. KEMP,                                   07-CV-1085-BR

       Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


H. PETER EVANS
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, OR  97223
(503) 245-6309

       Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Office of the General Counsel
**NANCY A. MISHALANIE**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

     Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Timothy S. Kemp seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which he denied Plaintiff's application
for continuing Disability Insurance Benefits (DIB) and found
Plaintiff ineligible for Supplemental Security Income (SSI)
payments pursuant to Titles II and XVI of the Social Security
Act.  This Court has jurisdiction to review the Commissioner's
decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **AFFIRMS** the decision
of the Commissioner as to his denial of Supplemental Security
Income benefits as of December 31, 2002.  The Court **REVERSES** the
decision of the Commissioner and **REMANDS** this matter pursuant to
sentence four of 42 U.S.C. § 405(g) for further administrative
proceedings as to the Commissioner's denial of Plaintiff's
application for continuing DIB.  The Court also **REMANDS** this
matter to the Commissioner for further administrative proceedings
to determine whether Plaintiff is entitled to SSI from May 21,

2  -  OPINION AND ORDER

2002 (the date Plaintiff applied for SSI) through December 31,
2002 (the date marking the beginning of the period for which the
ALJ determined Plaintiff was not entitled to SSI).


## ADMINISTRATIVE HISTORY

Plaintiff filed his initial application for DIB on
November 30, 1993.  On July 29, 1993, a SSA Claims Representative
determined Plaintiff had a disabling personality disorder with an
onset date of January 1, 1993, and, therefore, was entitled to
DIB.  Tr. 29.[1]  After conducting a periodic review on May 14,
2001, a different SSA Claims Representative determined
Plaintiff's personality disorder continued to be disabling and
added a secondary diagnoses of substance dependence disorder.
Tr. 32.  After conducting another periodic review on October 24,
2002, a third SSA Claims Representative determined Plaintiff was
no longer disabled as of October 24, 2002, and was no longer
entitled to DIB.  Tr. 37-38.  Plaintiff requested reconsideration
of that determination, and a disability hearing officer denied
Plaintiff's request on June 10, 2003.  Tr. 41, 51.  Meanwhile, on
May 21, 2002, Plaintiff also filed an application for SSI.  Tr.
37.  It was denied initially and on reconsideration.  Tr. 176,
179, 184.

---

[1] Citations to the official transcript of record filed by
Defendant on December 28, 2007, are referred to as "Tr."

3    -   OPINION AND ORDER

An Administrative Law Judge (ALJ) held a hearing on both the discontinuation of DIB and denial of SSI on July 11, 2005. Tr. 187.  Plaintiff did not appear at the hearing.  Tr. 187.  The ALJ, however, concluded Plaintiff's testimony was not essential. Tr. 187.  On December 1, 2005, the ALJ found Plaintiff was not disabled.  Tr. 187-95.  Plaintiff timely appealed, and the Appeals Council remanded the case for a second hearing because there was not any evidence that Plaintiff had received the original hearing notice.  Tr. 198.

A different ALJ held a second hearing on August 21, 2006, at which Plaintiff was represented by an attorney.  Tr. 334. Plaintiff and a VE testified at the hearing.  Tr. 334-67.  On September 26, 2006, the ALJ issued an opinion in which he concluded Plaintiff was not entitled to continuation of DIB based on his finding that Plaintiff's medical impairments had improved to the extent that he was capable of performing substantial gainful activity as of December 31, 2002.  Tr. 17-28. Accordingly, the ALJ also concluded Plaintiff was not entitled to SSI payments.

The ALJ's decision became the final decision of the Commissioner on June 11, 2007, when the Appeals Council denied Plaintiff's request for review.  Tr. 7-9.

4    -   OPINION AND ORDER

**BACKGROUND**

**I.    Plaintiff's Testimony**

Plaintiff was 35 years old on the date his disability began and 49 years old at the time of the second hearing.  Tr. 29, 363. Plaintiff completed school through the eleventh grade.  Tr. 340. He has been homeless since late 2002, currently sleeps on the grounds of a church with permission of the pastor, and receives mail through the address of a friend.  Tr. 351, 362, 370.  He stated he receives food stamps, which he uses to buy frozen dinners.  He prepares the frozen dinners using microwaves at grocery stores that have them available for customers' use. Plaintiff has a dog he cares for and that helps keep him calm.

Plaintiff reported he has worked at a variety of temporary jobs including handing out fliers, breaking up cardboard boxes, and delivering cars.  Tr. 339-40.  Before the onset of his disability, Plaintiff primarily worked as an auto-glass installer and glazer.  Tr. 339.  He testified he let his driver's license lapse several years ago because he cannot drive due to vision problems.  Tr. 341.

Plaintiff testified he takes hydrocodone and Xanax for chronic headaches that occur three times a day and last for approximately two hours.  Tr. 341.  In addition, he uses ibuprofen and marijuana to medicate his headaches although he testified he stopped using marijuana in December 2006.  Tr. 352-

53.

On May 21, 2002, Plaintiff reported to the SSA that he had
glaucoma.  Tr. 86.  On August 17, 2002, Plaintiff also reported
to Jay Dhiman, M.D., that he had glaucoma.  Tr. 147.  On
November 3, 2004, Plaintiff again reported to the SSA that he had
glaucoma.  Tr. 123.  On November 21, 2005, he reported to the SSA
that he could only see five to seven feet away.  Tr. 233.  At the
second hearing, however, Plaintiff testified he had some
difficulty seeing distances and denied ever alleging any degree
of blindness.  Tr. 233, 355-56.

Plaintiff testified hepatitis C has caused swelling in his
liver and constant fatigue, which requires him to sleep 14 hours
a day.  When he is not sleeping, he listens to the radio and
picks up around the church grounds for about 20 minutes a week.
He stated he has no hobbies, interests, or friends.  Tr. 350-52.

Plaintiff testified he is depressed and has panic attacks
two or three times a day.  Tr. 348.  When he has a panic attack,
he hides in his sleeping bag with his dog nearby.  Tr. 348.
Plaintiff stated he is angry at everyone and that he has
altercations about once a month.  Tr. 349.

## II.  Medical Evidence

Plaintiff has been diagnosed with personality disorder,
hepatitis C, and substance-addiction disorder.  Tr. 138, 293.  He
has been prescribed Xanax and oxycodone for those conditions, but

he has not undergone any other treatment.  In addition, he has
reported having HIV, headaches, Crohn's disease, and glaucoma.
Tr. 105.  Plaintiff primarily relies on emergency-room visits for
his medical care.  Tr. 344.

Suzanne Stubbs, M.D., performed a psychiatric evaluation of
Plaintiff on April 30, 2001, at the request of Disability
Determination Services (DDS).[2]  Tr. 125.  Dr. Stubbs did not
review Plaintiff's medical records, and, therefore, her opinion
is based solely on her examination and observation of Plaintiff
and Plaintiff's self-reporting.  Tr. 125.

Plaintiff reported to Dr. Stubbs that he had contracted HIV
from intravenous drug use and had "full-blown" AIDs.  Tr. 126.
In addition, he told her that he had hepatitis C and Crohn's
disease.  Tr. 126.  He also stated he was under the influence of
marijuana at the time of  Dr. Stubbs's evaluation.  Tr. 126.
Dr. Stubbs observed Plaintiff was a "poor historian overall."
Tr. 126.

Dr. Stubbs diagnosed Plaintiff with marijuana intoxication;
heroin dependence in full, sustained remission; and polysubstance
dependence.  Dr. Stubbs concluded Plaintiff's problems with
primary support groups, housing, and his economic situation were

---

[2] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

psychosocial stressors.  Tr. 130.  She opined Plaintiff was not

limited in his ability to follow simple, detailed, or complex

instructions; to maintain concentration, persistence, or pace; to

adapt to work stresses; to maintain regular attendance; and to

perform activities on a consistent basis although she noted his

judgment and insight were impaired due to his current marijuana

intoxication.  Tr. 130-31.  She assessed his Global Assessment

Functioning (GAF)[3] at 55.

Tr. 130.

Ajit Raisinghani, M.D., conducted a full internal medical

evaluation of Plaintiff on May 1, 2001, at the request of DDS.

His evaluation also was based on information from Plaintiff, who,

Dr. Raisinghani observed, was an "extremely poor historian."

Tr. 132.  Dr. Raisinghani opined the examination results were

"essentially normal."  Tr. 135.  He also opined Plaintiff could

lift and carry up to 20 pounds occasionally and 10 pounds

frequently; stand or walk up to six hours in an eight-hour day;

and bend or crouch occasionally.  Tr. 135.  A visual acuity test

---

[3] The GAF scale is used to report a clinician's judgment of
the patient's overall level of functioning on a scale of 1 to
100.  A GAF of 41-50 indicates serious symptoms (suicidal
ideation, severe obsessional rituals frequent shoplifting) or any
serious impairment in social, occupational, or school functioning
(*e.g.*, few friends, unable to keep a job).  A GAF of 51-60
indicates moderate symptoms (*e.g.*, flat affect and circumstantial
speech, occasional panic attacks) or moderate difficulty in
social, occupational, or school functioning (*e.g.*, few friends,
conflicts with peers or co-workers).  *Diagnostic and Statistical
Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

on May 1, 2001, shows Plaintiff's vision as 20/20.  Tr. 137.

Michael Skopec, M.D., a DDS psychiatrist, completed a
Psychiatric Review Technique Form (PRTF) on May 14, 2001, and
concluded Plaintiff had personality disorders and substance-
addiction disorders that were equal to a listed impairment.
Tr. 138.  Dr. Skopec opined Plaintiff had marked limitations in
maintaining social functioning and concentration, persistence, or
pace.

On August 17, 2002, Dr. Dhiman reviewed Plaintiff's medical
records back to May 1, 2001, and conducted a comprehensive
medical evaluation of Plaintiff.  Tr. 146.  Tr. 146.  Dr. Dhiman
found Plaintiff can stand and walk for six hours in an eight-hour
workday; does not have any limitations in sitting; can lift 50
pounds occasionally and 20 pounds frequently; can occasionally
bend, stoop, and crouch; and does  not have any manipulative,
communicative, or workplace environment limitations.  Tr. 150.
Dr. Dhiman also stated he did not think Plaintiff has any vision
problems although he was unable to quantify Plaintiff's vision
impairment because Plaintiff refused to cooperate.  Tr. 149-50.

On October 23, 2002, DDS physician Patrick Bianchi, M.D.,
completed a residual functional capacity (RFC) evaluation of
Plaintiff.  Tr. 151-60.  Dr. Bianchi found Plaintiff can lift and
carry 20 pounds frequently and 50 pounds occasionally; can sit,
stand, or walk for six hours in an eight-hour workday; does not

have any limitations on pushing or pulling with either his upper or lower extremities; can occasionally climb stairs and ramps but is precluded from climbing ropes, ladders, and scaffolding; and can occasionally bend, balance, stoop, kneel, crouch, and crawl. Dr. Bianchi did not find any visual limitations, but, again, Plaintiff was uncooperative.  Tr. 154, 157.  Dr. Bianchi concluded Plaintiff was not entirely credible even though his symptoms were attributable to a medically determinable impairment.  Tr. 156.

On October 23, 2002, DDS physician Charlotte Bible, M.D., completed a PRTF on Plaintiff.  Tr. 161.  She concluded she had insufficient evidence to evaluate Plaintiff properly because he failed to come to his appointments.  Tr. 161-62.

On February 15, 2003, Michael Joyce, M.D., conducted a comprehensive psychiatric examination of Plaintiff.  Tr. 163. Dr. Joyce diagnosed Plaintiff with probable marijuana dependence, heroin dependence in sustained remission, and hallucinogen abuse in sustained remission.  Tr. 167.  Dr. Joyce assessed Plaintiff's GAF at 70 or above.  Tr. 167.  He also diagnosed Plaintiff with HIV and Crohn's based on Plaintiff's statements. Tr. 167.  Dr. Joyce opined Plaintiff is "capable of responding appropriately to supervision, coworkers, or the usual work situation, including changes in a routine setting."  Tr. 167.

On March 3, 2003, C. Richard Dann, M.D., completed an

10  -  OPINION AND ORDER

Advisory Consultation Request.  Based on his review of
Plaintiff's medical records, he concluded there was not any
medical evidence to support a restriction of function.  Tr. 173.

On March 5, 2003, Donald Walk, M.D., completed an advisory
PRTF.  Dr. Walk reviewed Plaintiff's medical records and did not
find any medically determinable impairments.  Tr. 169.

Between June 23, 2005, and February 27, 2006, Plaintiff
visited a Kaiser clinic for primary care.  Tests conducted at
Kaiser show Plaintiff did not have HIV, but he tested positive
for the hepatitis C antibody.  Tr. 291.  In February 2006, the
clinic offered Plaintiff Interferon treatment for hepatitis C,
but Plaintiff declined.  Tr. 284.  During this period, Plaintiff
was also prescribed oxycodone for headaches and Xanax for
anxiety.  Rick Varan, M.D., however, opined oxycodone was not an
effective treatment for chronic headaches.  Tr. 284.  Dr. Varan
placed Plaintiff on a narcotics contract to preclude Plaintiff
from refilling his prescriptions early.  Tr. 293.

On January 5, 2006, Robert Shneidman, M.D., found Plaintiff
had "no overt features of Crohn's [disease]."  Tr. 297.

On January 6, 2006, Timothy O'Brien, Licensed Professional
Counselor (L.P.C.), assessed Plaintiff's GAF at 55.  Tr. 294.

On March 21, 2006, Nancy Cloak, M.D., conducted a
psychiatric evaluation of Plaintiff.  Tr. 323.  Dr. Cloak,
however, did not review Plaintiff's complete medical records.

11  -  OPINION AND ORDER

Tr. 323.  She diagnosed Plaintiff with polysubstance dependence in sustained full remission and personality disorder (not otherwise specified) with antisocial and narcissistic traits. Tr. 327.  Dr. Cloak assessed Plaintiff's GAF at 57.  Tr. 327. She also concluded Plaintiff can understand and remember instructions and can sustain appropriate social interactions when it is in his interests.  Tr. 327.  In addition, she opined the "primary barrier to employment is [Plaintiff's] anger and impulsivity" related to his personality disorder.  Tr. 327.  Dr. Cloak found Plaintiff's anger and impulsivity were "probably exacerbated by his use of alprazolam, which is known to cause disinhibition in persons with personality disorders."  Tr. 327.

## STANDARDS

"[A]t all times, the burden is on the claimant to establish his entitlement to disability insurance benefits."  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)(quotation and citation omitted).  *See also Patti v. Schweiker,* 669 F.2d 582, 586 (9th Cir. 1982)(*rev'd* on other grounds).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  After a claimant is

12  -  OPINION AND ORDER

found to be disabled and entitled to benefits, the Commissioner must periodically review that claimant's continued entitlement to such benefits. 20 C.F.R. §§ 404.1594(a), 416.994(a). The Commissioner must determine whether a recipient's impairments are medically improved, and, if so, whether that impacts the recipient's ability to work. 20 C.F.R. §§ 404.1594(b), 416.994(b). "Our determination regarding whether your disability continues will be made on the basis of the weight of the evidence." 20 C.F.R. §§ 404.1594(b)(6), 416.994(b)(1)(6).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,*

13 - OPINION AND ORDER

466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## REGULATORY SEQUENTIAL EVALUATIONS

**I.   Continued DIB.**

The Commissioner has developed a sequential inquiry to determine whether a claimant continues to be disabled within the meaning of the Act.  20 C.F.R. § 404.1594(f).  *See also Dixon v. Barnhart,* 324 F.3d 997 (8th Cir. 2003).  The Social Security Regulations require an eight-step analysis to determine whether a claimant's eligibility for DIB should be continued.  20 C.F.R. § 404.1594(f).

In Step One, the claimant is no longer disabled if the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).

In Step Two, the claimant continues to be disabled if the claimant's impairments meet or equal the severity of a listed impairment.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, if the claimant's impairments no longer meet or equal the severity of a listed impairment, the Commissioner

must determine whether the claimant has medically improved.  If the claimant has medically improved as shown by a decrease in medical severity, the Commissioner must consider Step Four.  If the claimant has not medically improved, the Commissioner must consider Step Five.  20 C.F.R. § 404.1594(f)(3).

In Step Four, if the claimant has medically improved, the Commissioner must determine whether the improvement is related to the claimant's ability to work; "*i.e.*, whether [] there has been an increase in the residual functional capacity."  If the improvement is unrelated to the claimant's ability to work, the Commissioner must consider Step Five.  If the medical improvement is related to the claimant's ability to work, the Commissioner must consider Step Six.  20 C.F.R. § 404.1594(f)(4).

In Step Five, if the claimant has not medically improved or if any medical improvement is unrelated to the claimant's ability to work, the Commissioner must consider whether any of the listed exceptions to medical improvement apply.  20 C.F.R. § 404.1594(d),(e),(f)(5).

In Step Six, if the claimant's medical improvement is related to the claimant's ability to work, the Commissioner must determine whether all of the claimant's current impairments in combination are severe considering their combined impact on the claimant's functional capacity.  If the claimant's combination of impairments does not significantly limit his or her ability to do

15  -  OPINION AND ORDER

basic work activities, the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(6).

In Step Seven, if the claimant's current impairment or combination of impairments is severe, the Commissioner must determine whether the claimant has the RFC to perform any past relevant work.  If a claimant can perform past relevant work, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(7).

In Step Eight, if the claimant is unable to do past relevant work, the Commissioner must determine whether the claimant can perform other work.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If a claimant can perform other work, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(8).

**II.  SSI Benefits.**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act and, therefore, is entitled to SSI.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially dispositive.

16  -  OPINION AND ORDER

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.1594(f)(2).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which is an assessment of the sustained, work-related physical and mental activities that the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.495(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR

17  -  OPINION AND ORDER

96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner

meets this burden, the claimant is not disabled.  20 C.F.R.
§ 416.920(g)(1).


## ALJ'S FINDINGS

The ALJ generally combined his analysis of Plaintiff's SSI
claim with his DIB claim for continuing benefits because the
eight-step analysis for continuing DIB incorporates the analysis
required under the five-step analysis to determine disability for
purposes of SSI benefits (*i.e.,* whether Plaintiff has engaged in
substantial gainful activity; whether Plaintiff has a severe
impairment, and, if not, whether Plaintiff has an impairment or
combination of impairments that meets or is equal to a listed
impairment; evaluation of Plaintiff's RFC; and whether Plaintiff
can perform his past relevant work, and, if not, whether a
significant number of jobs exist in the economy that Plaintiff
can do).  Tr. 18-19.

At Step One, the ALJ found Plaintiff had not engaged in
substantial gainful activity since December 31, 2002, but had
engaged in substantial gainful activity before that time and
posted earnings in 1995, 1996, and 1997.  Tr. 19.

At Step Two, the ALJ found Plaintiff had the severe
impairments of "personality disorder, not otherwise specified;
cannabis (marijuana) dependence in early claimed remission; and
history of polysubstance abuse in remission."  Tr. 20.  The ALJ

19  -  OPINION AND ORDER

found Plaintiff's headaches and hepatitis C were not severe impairments.  Tr. 20.

At Step Three, however, the ALJ found Plaintiff did not have medical impairments that met or were medically equal to the severity of any listed impairments as of December 31, 2002. Tr. 20.  The ALJ used Dr. Skopec's May 14, 2001, PRTF as the comparison point for determining whether Plaintiff is entitled to a continuation of DIB.[4]  The ALJ noted Dr. Skopec's opinion that Plaintiff had severe impairments in May 2001 equal to Listing 12.08 (personality disorder).  The ALJ, however, concluded the medical severity of Plaintiff's impairments had decreased by December 31, 2002.  Tr. 23.

At Step Four, the ALJ found Plaintiff's "medical improvement is related to his ability to work."  Tr. 23.  The ALJ, therefore, proceeded directly to Step Six.  Tr. 23.

At Step Six, the ALJ found Plaintiff's combined impairments are severe and cause some limitations in Plaintiff's functional capacity.  Tr. 23.

At Step Seven, the ALJ evaluated Plaintiff's RFC.  Tr. 26. The ALJ found Plaintiff is capable of "light to medium exertion with vocational nonexertional limitations" as follows:  Plaintiff

---

[4] As noted, on May 14, 2001, the SSA continued Plaintiff's DIB on the ground that Plaintiff was still disabled from his personality disorder and substance-dependence disorder.  The SSA appears to have relied on Dr. Skopec's report in reaching its decision.

20   -   OPINION AND ORDER

can lift and carry 20 pounds frequently and 50 pounds
occasionally; can cumulatively sit, stand, and walk for six hours
in an eight-hour workday with normal breaks; does not have any
limitations on pushing or pulling with either his upper or lower
extremities; can occasionally climb stairs and ramps but is
precluded from climbing ropes, ladders, and scaffolding; can
occasionally bend, balance, stoop, kneel, crouch, and crawl but
is precluded from frequent balancing; can perform simple,
routine, repetitive work without public contact; and can work
alone rather than as part of a team.  Tr. 26.  The ALJ, however,
concluded Plaintiff cannot do any past relevant work because all
of that work requires either working with the public or as part
of a team.  Tr. 26.

At Step Eight, the ALJ found Plaintiff can perform a signif-
icant number of jobs in the national economy.  Following the
testimony of the VE, the ALJ found Plaintiff can perform work as
a motel cleaner, industrial cleaner/janitor, or small-products
assembly worker.  Tr. 27.  Accordingly, the ALJ concluded
Plaintiff is not disabled and, therefore, is not entitled to
either continued DIB or to SSI benefits.


## PLAINTIFF'S CLAIM FOR CONTINUATION OF DIB

Plaintiff alleges the ALJ erred at Step Three of his
continuing DIB analysis when he found Plaintiff had improved

21  -  OPINION AND ORDER

medically as of December 31, 2002.

Medical improvement is defined as

> any decrease in the medical severity of
> impairment(s) present at the time of the most
> recent favorable medical decision that you
> were disabled or continued to be disabled and
> is determined by a comparison of prior and
> current medical evidence which must show that
> there have been changes (improvement) in the
> symptoms, signs or laboratory findings
> associated with that impairment(s).

20 C.F.R. § 404.1594(c)(1).  See also *Warre v. Comm'r of Soc.
Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  "In other
words, the key question is not whether the claimant still
suffered from the same medical problem he had when benefits were
awarded, but whether the severity of the problem had decreased
sufficiently to enable him to engage in gainful activity."
*Warre*, 439 F.3d at 1006.  To determine whether a claimant has
medically improved and whether the claimant is entitled to
continued DIB, the Commissioner must compare the severity of a
claimant's impairments that existed at the time of the claimant's
"most recent favorable medical decision" to the current severity
of those impairments.  20 C.F.R. § 404.1594(b)(7).  The "most
recent favorable medical decision" is the latest decision that
considers the medical evidence to make a final determination that
a claimant is disabled.  20 C.F.R. § 404.1594(b)(7).  A
claimant's disability benefits may only be terminated if
substantial evidence in the record shows there has been medical

improvement in the individual's impairment or combination of
impairments.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2[d] Cir.
2002).  A reasonable determination as to medical improvement
cannot be made without reviewing the underlying medical record on
which the prior decision of disability was premised.  *Id*. at 587.

Plaintiff's "most recent favorable medical decision" is the
SSA Claims Representative's continuation of DIB issued May 14,
2001.  Tr. 32.  In that decision, the SSA Claims Representative
determined Plaintiff suffered from the impairments of personality
disorder and substance-abuse disorder.  Tr. 32.  Accordingly, the
ALJ was required to compare the medical evidence regarding
Plaintiff's personality and substance-abuse disorders that formed
the basis for that decision to the current medical evidence
regarding those impairments.

In his assessment of Plaintiff's medical improvement, the
only medical evidence underlying Plaintiff's "most favorable
recent decision" considered by the ALJ was a "check-the-box" PRTF
completed on May 14, 2001, by Dr. Skopec, a reviewing physician,
in which he concluded Plaintiff's symptoms satisfied Listing
12.08 (Tr. 125-36).  The April 2001 report of Dr. Stubbs, an
examining physician, and the May 2001 report of Dr. Raisinghani,
an examining physician, however, are also part of that record.
Thus, the ALJ was required to consider those reports because they
constitute medical evidence that underlies Plaintiff's most

recent favorable medical decision.  *See Veino*, 312 F.3d at 587.

Dr. Raisinghani opined Plaintiff's examination results were "essentially normal."  Tr. 135.  He observed Plaintiff was oriented to time, place, and person and that his mood and responses were appropriate and his memory was "grossly intact." Tr. 134.  As noted, Dr. Stubbs diagnosed Plaintiff with marijuana intoxication; heroin dependence in full, sustained remission; and polysubstance dependence.  Dr. Stubbs concluded problems with Plaintiff's primary support groups, housing, and economic situation were psychosocial stressors for Plaintiff.  Tr. 130. She opined Plaintiff was not limited in his ability to follow simple, detailed, or complex instructions; to maintain concentration, persistence, or pace; to adapt to work stresses; and to maintain regular attendance and perform activities on a consistent basis.  She noted, however, Plaintiff's judgment and insight were impaired due to his current marijuana intoxication. Tr. 130-31.  She opined Plaintiff would not "have any impairment in returning to work at this time" if he were he not intoxicated. Tr. 130.  Thus, the opinions of Drs. Raisinghani and Stubbs contradict Dr. Skopec's PRTF.  Nevertheless, the ALJ failed to provide any reasons for not considering those opinions as required under 20 C.F.R. § 404.1594(b)(7) when he determined Plaintiff is not entitled to a continuation of DIB.

On this record, the Court concludes the ALJ erred at Step

Three when he did not consider all of the medical evidence underlying Plaintiff's most recent favorable medical decision issued May 14, 2001, as required under 20 C.F.R. § 416.1594(b)(7) before determining whether the severity of Plaintiff's impairments had medically improved.  In addition, the Court notes the relevant date pertinent to continuation of Plaintiff's DIB is October 24, 2002, which is the date the SSA found Plaintiff was no longer disabled and, therefore, no longer entitled to DIB.

The Court notes even if the ALJ determines, after considering all of the medical evidence underlying Plaintiff's most recent favorable medical decision, that the medical severity of Plaintiff's impairment has not decreased, the ALJ must consider the exceptions to the medical-improvement rule.

> "The law provides for certain limited
> situations when your disability can be found
> to have ended even though medical improvement
> has not occurred . . . .  These exceptions to
> medical improvement are intended to provide a
> way of finding that a person is no longer
> disabled in those limited situations where,
> even though there has been no decrease in
> severity of the impairment(s), evidence shows
> that the person should no longer be
> considered disabled or *never should have been
> considered disabled*.

20 C.F.R. § 404.1594(d)(emphasis added).  Thus, the ALJ may consider whether, based on substantial evidence in the record, Plaintiff's impairment is not as severe as it was considered to be at the time of the most recent favorable decision or that the prior disability decision was incorrect because of error on its

25  -  OPINION AND ORDER

face, missing medical evidence, or new evidence.  20 C.F.R.
§ 404.1594(d)(3)-(4).


## PLAINTIFF'S CLAIM FOR SSI BENEFITS

**II.  Discussion.**

Plaintiff contends the ALJ erred when he found
(1) Plaintiff's hepatitis C and headaches are not severe
impairments, (2) rejected the opinions of Dr. Cloak and L.P.C.
O'Brien, and (3) posed an inadequate hypothetical to the VE.

**A.  Period at Issue.**

Plaintiff was receiving DIB payments at the time he filed
his application for SSI on May 21, 2002.

> When you file an application in the month
> that you meet all the other requirements for
> eligibility, the earliest month for which we
> can pay you benefits is the month following
> the month you filed the application. If you
> file an application after the month you first
> meet all the other requirements for
> eligibility, we cannot pay you for the month
> in which your application is filed or any
> months before that month.

20 C.F.R. § 416.335.  Accordingly, if the ALJ found Plaintiff to
be disabled and eligible for SSI, Plaintiff would be entitled to
SSI payments beginning June 2002.

The ALJ, however, determined Plaintiff was not disabled as
of December 31, 2002, and did not address Plaintiff's medical
condition as of May 21, 2002.  Thus, the Court, will review

the ALJ's opinion as to Plaintiff's disabled status on
December 31, 2002.

> **B.   The ALJ properly concluded Plaintiff's hepatitis C and headaches are not severe impairments.**

Plaintiff contends the ALJ erred at Step Two when he found
Plaintiff's hepatitis C and headaches are not severe impairments.

At Step Two, the ALJ determines whether the claimaint has
any medically severe impairment or combination of impairments.
A severe impairment is one that "significantly limit[s]" the
claimant's physical or mental ability to conduct basic work
activities." *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir.
2003). *See also* 20 C.F.R. § 416.1594(f)(2).   SSR 96-3p clarifies
this standard:  An impairment is not severe if it "has no more
than a minimal effect on the ability to do basic work
activities." *Id*.  *See also Smolen v. Chater*, 80 F.3d 1273, 1290
(9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.
1988).  Step Two analysis is the "de minimis screening device to
dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citation
omitted).

> **1.   Hepatitis C.**

The ALJ determined Plaintiff's hepatitis C is not a
severe impairment.  Tr. 21.  Although Plaintiff was diagnosed
with hepatitis C at Kaiser, Dr. Barton in his chart note dated
January 5, 2006, stated the history and etiology of the disease

were not established and that the disease did not show any sign
of being active.  Tr. 21, 295.  The ALJ noted lab results did not
show any cirrhosis.  Tr. 21, 295.  In addition, Calvert Shipley,
M.D., and Robert Shneidman, M.D., who also treated Plaintiff at
Kaiser, both opined on January 28, 2006, and January 5, 2006,
respectively that Plaintiff does not have any overt signs of
chronic liver disease.  Tr. 291, 297.  In addition, Dr. Varan
reported on January 30, 2006, that Plaintiff's transaminases were
two or three times higher than normal, but his synthetic function
was normal.  Tr. 286.

        On this record, the Court finds the ALJ did not err
when he found Plaintiff's hepatitis C is not a severe impairment.

        **2.    Headaches.**

        The ALJ determined Plaintiff's headaches are not severe
and concluded Plaintiff was reporting chronic debilitating
headaches in order to obtain prescription pain medication.
Tr. 24.  The ALJ also noted Plaintiff was evasive during the
hearing when questioned about his headache pain.  Tr. 24.  The
record supports the ALJ's conclusion.  For example, the diagnoses
of headaches throughout the Kaiser records are based solely on
Plaintiff's reports to healthcare providers.  Tr. 283-322.
Colleen Finnigan, M.D., noted on September 29, 2005, that
Plaintiff reported he was going to the emergency room for Vicodin
for his headaches because the Kaiser pharmacy would not give

him a refill.  Tr. 302.  George Barton, M.D. noted on
January 6, 2006, that Plaintiff "is using the ER to obtain pain
meds."  Tr. 295.  As noted, Dr. Varan placed Plaintiff on a drug
contract to preclude Plaintiff from refilling his prescriptions
early.  Tr. 284.  Although Dr. Varan also noted it is not
"entirely conventional" to manage chronic headaches with chronic
daily narcotics, he determined it would be best to continue the
regimen in order to "cultivate rapport" with Plaintiff,
especially given his past hostile behavior to caregivers.  Tr.
293.

On this record, the Court finds the ALJ did not err
when he found Plaintiff's headaches are not a severe impairment.

**B.    The ALJ properly rejected the opinions of Dr. Cloak and
       L.P.C. O'Brien.**

Plaintiff asserts the ALJ erred by (1) rejecting the opinion
of Dr. Cloak as to Plaintiff's anger and impulsivity issues and
GAF score and (2) failing to consider the opinion of medical
source L.P.C. O'Brien.

**1.    Dr. Cloak.**

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record."  *Thomas v.*

*Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas,* 278 F.3d at 957.  See also *Lester*, 81 F.3d at 830-32.

        Here the ALJ did not reject Dr. Cloak's opinion in its entirety.  Contrary to Plaintiff's assertion, the ALJ acknowledged Plaintiff's anger and impulsivity issues when he stated Plaintiff was "manipulative and abusive of medical providers" and "abusive and threatening to Social Security claims representatives."  Tr. 25.  The ALJ noted Dr. Cloak's opinion was based largely on Plaintiff's descriptions of his symptoms, which the ALJ found to be greatly exaggerated.  Tr. 22.  The ALJ, however, found Dr. Cloak's overall opinion is consistent with the opinions of other physicians and medical sources in the record.

        The ALJ explained he did not give any weight to Dr. Cloak's assessed GAF or evaluation of Plaintiff's credibility because neither was consistent with either the overall medical evidence in the record or with Dr. Cloak's functional assessments of Plaintiff.  For example, Dr. Cloak opined Plaintiff could understand and remember instructions with mild deficits in concentration.  Tr. 327.  She also opined Plaintiff "should be able to do simple and repetitive tasks without difficulty and

30  -  OPINION AND ORDER

would likely be able to perform more detailed and complex tasks as well."  On February 15, 2003, Dr. Joyce also concluded Plaintiff is "capable of responding appropriately to supervision, coworkers, or the usual work situation, including changes in a routine setting."  Tr. 167.

On this record, the Court concludes the ALJ did not err when he partially rejected Dr. Cloak's opinion because he provided legally sufficient reasons supported by substantial evidence in the record for doing so.

### 2.   L.P.C. O'Brien.

L.P.C. O'Brien is a treating medical source.  See 20 C.F.R. § 416.902.  Medical sources are divided into two categories:  "acceptable" and "not acceptable."  *Id*.  Acceptable medical sources include licensed physicians and psychologists. *Id*.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2. The Regulation notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed acceptable medical sources under our

31  -  OPINION AND ORDER

> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when

determining the weight to give an opinion from those "important"

sources include:  How long the source has known the claimant and

how often the source has seen the claimant; the consistency of

the source's opinion with other evidence in the record; the

relevance of the source's opinion; the quality of the source's

explanation of his opinion; and the source's training and

expertise.  SSR 06-03p, at *4.  On the basis of the above

factors, the ALJ may assign a medical opinion from a source that

is not an "accepted medical source" either greater or lesser

weight than that of an accepted medical source.  SSR 06-03p,

at *5-*6.  The ALJ, however, must explain the weight assigned to

such sources to the extent that a claimant or subsequent reviewer

may follow the ALJ's reasoning.  SSR 06-03p, at *6.

        L.P.C. O'Brien treated Plaintiff on January 6, 2006,

for anxiety.  Tr. 292.  Much of L.P.C. O'Brien's report is based

on subjective symptom testimony and medical history provided by

Plaintiff.  L.P.C. O'Brien, nonetheless, assessed Plaintiff's

cognitive functioning and long- and short-term memory as intact.

Tr. 290, 292, 294.  L.P.C. O'Brien noted Plaintiff's stress level

was high.  Tr. 290.  He also reported his impression of Plaintiff

as having adjustment disorder with anxiety, but he pointed out

that his opinion was based on a single evaluation.  Tr. 294.  He assigned Plaintiff a GAF of 55.

The ALJ did not address L.P.C. O'Brien's opinion. Although the ALJ may assign lesser or greater weight to a not acceptable source than to an acceptable source, the ALJ must explain his reasons for doing so.  SSR 06-03p, at *6.  The Court, therefore, concludes the ALJ erred when he did not give sufficient reasons for failing to consider L.P.C. O'Brien's opinion.

Defendant, however, contends the ALJ's omission is harmless error because it is "inconsequential" to the ALJ's "ultimate nondisability determination."  See *Stout*, 454 F.3d at 1055.  Defendant points out that a GAF of 55 is not inconsistent with the ALJ's RFC because the RFC incorporates mild impairment in functioning as reflected by a GAF score of 55.  In addition, L.P.C. O'Brien opinion was based in large part on Plaintiff's reports of his symptoms after a single evaluation.  In any event, the Court concludes the ALJ's findings are not inconsistent with L.P.C. O'Brien's report taken as a whole.  Accordingly, the ALJ's consideration of L.P.C. O'Brien's opinion would have been inconsequential to the ALJ's determination of disability.

On this record, the Court finds the ALJ's failure to address the opinion of L.P.C. O'Brien was harmless error.

**C.    Inadequate Hypothetical.**

Plaintiff contends the ALJ posed an inadequate hypothetical to the VE when he failed to include limitations based on Plaintiff's anger issues, chronic headaches, and hepatitis C.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

In his RFC evaluation of Plaintiff, the ALJ found Plaintiff had the following functional limitations:  He can lift and carry 20 pounds frequently and 50 pounds occasionally; can cumulatively sit, stand, and walk for six hours in an eight-hour workday with normal breaks; does not have any limitations on pushing or pulling with either his upper or lower extremities; can occasionally climb stairs and ramps but is precluded from climbing ropes, ladders, and scaffolding; can occasionally bend, balance, stoop, kneel, crouch, and crawl but is precluded from frequent balancing; can perform simple, routine, repetitive work without public contact; and should work alone and not as part of a team.  Tr. 26.  In addition, the ALJ found Plaintiff cannot perform any past relevant work because all of Plaintiff's past relevant work either required working with the public or working as part of a team.  Tr. 26.

At the hearing, the ALJ asked the VE to consider a hypothetical claimant who would work best in a simple, routine, repetitive work environment with no public contact; would work

best alone and not as part of a team; could engage in normal,
brief social interactions in the workplace, but would work best
if most of the labor was performed individually and not dependent
on a team atmosphere; and could generally engage in work at the
light- to medium exertion level.  Tr. 367.  The ALJ properly
included limitations caused by Plaintiff's hepatitis C that
restrict any work Plaintiff can do to light- to medium exertion
levels.  In addition, the ALJ included limitations that could
arise from Plaintiff's anger issues by restricting him to simple
work without public contact and without teamwork.  The ALJ
omitted any limitations based on Plaintiff's headaches because
the ALJ properly found Plaintiff was exaggerating his headache
symptoms for the purpose of obtaining drugs.

        The ALJ then asked the VE whether, given these limitations
and Plaintiff's age, education, and prior work experience, there
were any jobs in the national economy that Plaintiff could
perform.  Tr. 367.  The VE stated a person with those limitations
and qualifications could work as a motel cleaner, an industrial
cleaner, or a small-products assembler.  Tr. 368.

        On this record, the Court concludes the ALJ did not pose an
inadequate hypothetical to the VE because the hypothetical
accurately included Plaintiff's limitations as reflected in the
ALJ's findings and RFC assessment.

        In summary, the Court concludes the ALJ did not err when he

35  -  OPINION AND ORDER

found Plaintiff is not disabled and, therefore, is not entitled to SSI benefits as of December 31, 2002.

### REMAND

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the Court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*. The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if

36  -  OPINION AND ORDER

the case were remanded for further proceedings.  *Id.* at 1178 n.2.


**I.   Continuation of DIB.**

The ALJ erred when he evaluated whether Plaintiff had
medically improved since his last continuation of benefits by
failing to analyze all of the medical evidence underlying
Plaintiff's most recent favorable decision of May 14, 2001, as
required under 20 C.F.R. § 416.1594.

In addition, the Court notes the relevant date for
consideration of the continuation of Plaintiff's DIB is
October 24, 2002, which is the date the SSA found Plaintiff was
no longer disabled and no longer entitled to DIB.

**II.  SSI.**

The Court has found the ALJ did not err when he concluded
Plaintiff is not disabled within the meaning of the Act as of
December 31, 2002.  Plaintiff, however, filed his application for
SSI on May 21, 2002.  Although the SSA determined on October 24,
2002, that Plaintiff was no longer disabled and, therefore, no
longer entitled to DIB, the ALJ did not address whether Plaintiff
was disabled from June 2002 (the first date he could be eligible
for SSI) through October 24, 2002, for purposes of receiving SSI
or whether he met the other requirements to qualify for SSI under
the Act (*e.g.*, a claimant cannot make more income than is

permitted or have more resources than is permitted).  *See* 20
C.F.R. § 416.202.  In addition, if the ALJ determines the May 14,
2001, continuation of Plaintiff's benefits was in error (*i.e.*,
that Plaintiff was not disabled as of May 14, 2001), Plaintiff
may not be entitled to any SSI benefits in any event.

On this record, the Court, therefore, concludes further
administrative proceedings are necessary to determine whether
Plaintiff was eligible on May 21, 2002, to receive SSI benefits
from June 2002 through December 31, 2002.


## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the
Commissioner as to his denial of Supplemental Security Income
benefits as of December 31, 2002.  The Court **REVERSES** the
decision of the Commissioner and **REMANDS** this matter pursuant to
sentence four of 42 U.S.C. § 405(g) for further administrative
proceedings as to the Commissioner's denial of Plaintiff's
application for continuing DIB.  The Court also **REMANDS** this
matter to the Commissioner for further administrative proceedings
to determine whether Plaintiff is entitled to SSI from May 21,
2002 (the date Plaintiff applied for SSI) through December 31,
2002 (the date marking the beginning of the period for which the
ALJ determined Plaintiff was not entitled to SSI).

Section 406(b) of the Social Security Act "controls fees for

38  -  OPINION AND ORDER

representation [of Social Security claimants] in court."
*Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R.
§ 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a
reasonable [attorneys'] fee . . . not in excess of 25 percent of
the . . . past-due benefits' awarded to the claimant." *Id*. at
795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does
not provide a time limit for filing applications for attorneys'
fees and Federal Rule 54(d)(2)(B) is not practical in the context
of Social Security sentence-four remands, Federal Rule of Civil
Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006
(Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*,
450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future
application for attorneys' fees under § 406(b) is filed "within a
reasonable time" as required under Rule 60(b)(6), the Court
orders as follows:  If the Commissioner finds Plaintiff is
disabled on remand and awards Plaintiff past-due benefits and if,
as a result, Plaintiff intends to submit such application for
attorneys' fees under § 406(b), Plaintiff shall submit any such
application within 60 days from receipt of the Notice of Award by
the Commissioner.

IT IS SO ORDERED.

DATED this 17th day of October 2008.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge